UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BARBARA RIVARD-CROOK, et al., | Case No. 2:10-cv-02215-MMD-GWF |
| Plaintiffs, | |
| | ORDER |
| v. | (Plfs.' Motion to Amend Complaint – dkt. no. 63; |
| ACCELERATED PAYMENT TECHNOLOGIES, INC., et al., | Plfs' Motion for the Imposition of a Constructive Trust – dkt. no. 64) |
| Defendants. | |

Before the Court is Plaintiffs' Motion to Amend Complaint (dkt. no. 63) and Motion for the Imposition of a Constructive Trust Regarding Defendant APT's Sales Proceeds (dkt. no. 64).

I.    BACKGROUND

The following allegations are set forth in Plaintiffs' complaints filed in this and three other cases filed in this district.  *See Granat v. Accelerated Payment Technologies*, No. 2:11-cv-986 (filed June 15, 2011); *Gautier v. Accelerated Payment Technologies, Inc.*, No. 2:12-cv-3 (filed Jan. 3, 2012); *Conners v. Accelerated Payment Technologies, Inc.*, No. 2:12-cv-776 (filed May 9, 2012).  These cases have all been consolidated into this action.  Plaintiffs Barbara Rivard-Crook, Bill Crook, Ramon Corona, Monique DeChaine, Charles Drake, Jr., Steve Gautier, Todd Granat, Lenora Hayes, Risa Herrera, Nate Imahara, Erika Knapp, Sandra Laue, John Lawrence, Arcelia Maldonado, Kelly Stevens, Rick Wright were all employed for Defendant Accelerated Payment Technologies, Inc. ("APT") and its predecessor-in-interest, CAM Commerce Solution

1   ("CAM") (collectively "the Companies") as Inside Sales Representatives.  Plaintiffs Terry
2   Conners, Neil Maglaya, and Ryan Brennan were employed as Merchant Services
3   Representatives for the Companies.

4       APT, a Delaware corporation with its principal office located in Utah, maintains an
5   office in Henderson, Nevada, where all Plaintiffs were employed as sales
6   representatives.   Plaintiffs were responsible for selling credit/debit card payment
7   processing packages for APT's credit card processing operations.  In addition to a base
8   salary, Plaintiffs received commission income based on sales made pursuant to
9   employment agreements entered into by APT and Plaintiffs.

10       In late July 2010, APT released its "Revised Compensation Plan" and amended
11   various commission schemes and sales goals provided to Plaintiffs without notice or
12   input from Plaintiffs.   Plaintiffs allege that these changes deprived them of back
13   commissions they were entitled to under their previous agreements, and resulted in
14   significant losses incurred by all Plaintiffs.  Plaintiffs filed these suits alleging breach of
15   contract, breach of implied covenant of good faith and fair dealing, unjust enrichment,
16   unpaid wages under NRS § 680 *et seq.*, fraud in the inducement, intentional and
17   negligent misrepresentation, and conversion.

18       On October 31, 2012, Plaintiffs filed a Motion to Amend to (1) substitute Plaintiff
19   Kelly Stevens' father, Richard Nelson, as a representative of Kelly Stevens' estate; (2)
20   add Vegas Holding Corporation, Great Hill Partners, LLC, Great Hill Equity Partners III,
21   LP, and Great Hill Equity Partners IV, LP as additional defendants to this action; and (3)
22   add three additional causes of action for preliminary / permanent injunction, breach of
23   guarantee, and conspiracy.  (*See* dkt. no. 63.)  This Motion follows the October 2, 2012,
24   sale of APT to Global Payments, Inc. by the four-above mentioned proposed defendants
25   for $413 million.  Fearing that APT's sale would result in a loss of Plaintiffs' assets,
26   Plaintiffs seek to add APT's sellers to the suit to protect their recoveries.

27   ///

28   ///

1
2
3

Also on October 31, 2012, Plaintiffs filed a Motion for the Imposition of a Constructive Trust, arguing that APT's sale mandates the creation of an equitable trust to preserve Plaintiffs' assets held by APT.  (*See* dkt. no. 64.)

4

**II.   DISCUSSION**

5

**A.   Motion to Amend (dkt. no. 63)**

6
7
8
9

APT opposes Plaintiffs' Motion on the grounds Plaintiffs' proposed addition of a preliminary and permanent injunctive relief claim is futile and that the addition of four new defendants will prejudice APT and the new parties.  APT does not challenge the two additional causes of action.

10

**1.   Legal Standard**

11
12
13
14
15
16
17
18
19
20

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its complaint only by leave of the court once responsive pleadings have been filed and in the absence of the adverse party's written consent.  *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 799 (9th Cir. 2001).  The court has discretion to grant leave and should freely do so "when justice so requires."  *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting Fed. R. Civ. P. 15(a)).  Nonetheless, courts may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

21
22
23
24
25
26
27
28

Although leave to amend a complaint is liberally granted under Fed. R. Civ. P. 15, "leave to amend need not be granted if the proposed amended complaint would subject to dismissal."  *Bellanger v. Health Plan of Nev., Inc.*, 814 F. Supp. 914, 916 (D. Nev. 1992) (citing *United Union of Roofers, Waterproofers, and Allied Trades No. 40 v. Insurance Corp. of Am.*, 919 F.2d 1398 (9th Cir.1990); *see also Johnson v. Am. Airlines*, 834 F.2d 721 (9th Cir. 1987) (stating that "courts have discretion to deny leave to amend a complaint for 'futility,' and futility includes the inevitability of a claim's defeat on summary judgment.").

**2.    Analysis**

APT fails to provide sufficient basis for the Court to deny Plaintiffs' request to amend their Complaint.  But Plaintiffs' proposed Amended Complaint is not without problems.  Like many drafters of complaints that come before this Court, Plaintiffs are guilty of a common pleading mistake when seeking equitable relief.  Injunctive relief, standing alone, is not a cause of action.  *State Farm Mut. Auto. Ins. Co. v. Jafbros Inc.*, 860 P.2d 176, 178 (Nev. 1993) (referring to an injunction as a remedy); *Cole v. CIT Grp./Consumer Fin., Inc.*, No. 53561, 2010 WL 5134999, at *1 n.1 (Nev. Dec. 9, 2010) (stating that injunctive relief is a remedy, not a cause of action).  "Injunctive relief, like damages, is a remedy requested by the parties, not a separate cause of action."  *Cox Commc'ns PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d. 1272, 1283 (S.D. Cal. 2002) (dismissing the cause of action for injunctive relief because plaintiff correctly sought an injunction as a remedy in its prayer for relief).  Injunctive relief is available when a plaintiff is entitled to such a remedy on an independent cause of action.  *Cole*, 2010 WL 5134999, at *1 n.1.  For this reason, a properly pled complaint lists under its prayer for relief an injunctive remedy, but does not list an injunction (or, to give another example, a declaratory judgment) as a cause of action.

Accordingly, Plaintiffs' request to amend their Complaint to include an injunction as a cause of action is denied.  However, Plaintiffs may include injunctive remedies under their prayer for relief so long as one of their causes of action supports equitable relief.  Contract and unjust enrichment claims can serve as the basis for injunctive relief.  *See Barnes v. Gorman*, 536 U.S. 181, 187 (2002) ("[P]unitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract."); *Ramanathan v. Saxon Mortg. Servs., Inc.,* 2011 WL 6751373, at *6 (D. Nev. 2011) (citing *Leasepartners Corp. v. Robert L. Brooks Trust,* 942 P.2d 182, 187 (Nev. 1997) (describing an unjust enrichment claim as a cause of action in equity)).  Where, as here, a "plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to

4

1   preserve the status quo pending judgment where the legal remedy might prove
2   inadequate and the preliminary relief furthers the court's ability to grant the final relief
3   requested." *U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir.
4   1999).  As Plaintiffs seek a constructive trust to preserve assets they believe are entitled
5   to them, an injunctive remedy may be available.  *See CSC Holdings, Inc. v. Redisi*, 309
6   F.3d 988, 996 (7th Cir. 2002) (holding that a preliminary injunction freezing assets is
7   lawful where an equitable constructive trust is sought).  While the Court does not decide
8   the ultimate question of the availability of injunctive relief in this Order, it is certainly not a
9   frivolous or futile request.  Accordingly, Plaintiffs must be afforded the opportunity to
10  amend their Complaint.

11         APT also argues that Plaintiffs' proposed Amended Complaint would prejudice the
12  four newly added parties and APT.  The Court is not persuaded by this conclusory
13  argument.  That new discovery *might* be required in order to see the case to its
14  conclusion does not prevent Plaintiffs from amending their claims.  The new parties may,
15  upon a motion showing good cause, seek extensions on their discovery and motion
16  deadlines.  But Defendants cannot use these upcoming deadlines to thwart the liberal
17  thrust of federal pleading practice.

18         **B.      Motion for the Imposition of a Constructive Trust (dkt. no. 64)**

19         Concurrent with the filing of their Motion to Amend, Plaintiffs filed a Motion for the
20  Imposition of a Constructive Trust seeking creation of an equitable trust to hold the
21  proceeds from APT's sale in trust pending resolution of this case.  (Dkt. no. 64.)  APT
22  opposes the request.

23                **1.      Legal Standard**

24         In Nevada, imposition of a constructive trust requires: "(1) [that] a confidential
25  relationship exists between the parties; (2) retention of legal title by the holder thereof
26  against another would be inequitable; and (3) the existence of such a trust is essential to
27  the effectuation of justice."  *Waldman v. Maini*, 195 P.3d 850, 857 (Nev. 2008).  A
28  plaintiff seeking a constructive trust must prove these elements by clear and convincing

1    evidence. *See Garteiz v. Garteiz*, 254 P.2d 804, 806 (Nev. 1953); *Taylor v. Fields*, 178

2    Cal. App. 3d 653, 656 (Cal. Ct. App. 1986) ([T]the party attempting to establish the

3    constructive trust must establish the claim by clear and convincing evidence.").

4              **2.**    **Analysis**

5          Plaintiffs bring this Motion seeking to place the cart before the horse.  The Court

6    is told to impose the drastic equitable remedy of a constructive trust on the proceeds of

7    APT's sale – the cart – before Plaintiffs demonstrate an entitlement to any of these funds

8    or demonstrate that APT withheld these funds through fraud, embezzling, or wrongdoing

9    – the horse.  While APT's sale might complicate collection efforts should Plaintiffs receive

10    a judgment in their favor, the inclusion of the additional defendants named above

11    sufficiently protects Plaintiffs should any unscrupulous defendant attempt to evade its

12    liability to Plaintiffs.  Like any potential creditor, Plaintiffs must wait until judgment for

13    their recovery, short of demonstrating by clear and convincing evidence that a

14    constructive trust ought to issue.

15          As a threshold matter, it is not clear to the Court that a constructive trust is an

16    appropriate remedy in circumstances like this one.  As it is a remedy available to a court

17    sitting in equity, a constructive trust cannot issue to cure a mere breach of contract

18    claim. *See* Caryl A. Yzenbaard, et al., *Bogert's Trust and Trustees* § 471 (2012).  Here,

19    Plaintiffs seek damages from APT on the grounds that APT violated employment

20    contracts (or, alternatively, various quasi-contracts) it entered into with its sales

21    representatives by making false representations as to compensation packages and by

22    failing to so compensate.  In essence, Plaintiffs seek unpaid wages, and prematurely ask

23    the Court to take the funds due to a transfer in assets from the Defendant. *See Hill v.*

24    *Opus Corp.*, 841 F. Supp. 2d 1070, 1084 (C.D. Cal. 2011) (holding that plaintiffs must

25    first prove that defendant's transfers of assets were unlawful "before they can pursue

26    any collection mechanism, be it an action alleging fraudulent conveyance or imposition

27    of a constructive trust").  Further, the Nevada Supreme Court has noted that "[a] liability

28    does not constitute property that may be subject to a constructive trust." *Danning v.*

1   *Lum's, Inc.*, 478 P.2d 166, 168 (Nev. 1970).  Short of demonstrating with at least some

2   specificity that fraudulent conduct has occurred or that the proceeds of APT's sale are in

3   danger of disappearing, Plaintiffs' concerns are entirely speculative.

4           **a.**        **Existence of a Confidential Relationship**

5          Even if a constructive trust is appropriate, Plaintiffs fail to meet their steep burden

6   to impose this remedy.  First, the Court is not convinced that a confidential relationship

7   between APT and Plaintiffs existed.  "The requirement that a confidential relationship

8   exist is based on the idea that the existence of the relationship creates an inference of

9   fraud or undue influence when property is obtained without consideration."  *Waldman*,

10  195 P.3d at 857.  Although it does not require precise fiduciary status between the

11  parties, a confidential relationship nevertheless exists when "the person in whom the

12  special trust is placed owes a duty to the other party similar to the duty of a fiduciary,

13  requiring the person to act in good faith and with due regard to the interests of the other

14  party."  *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995); *see also Mackintosh v. Jack*

15  *Matthews and Co.*, 855 P.2d 549, 553 (Nev. 1993) (noting that "[t]he duty to speak does

16  not necessarily depend on the existence of a fiduciary relationship" and holding that a

17  special relationship existed even though the parties did not create a fiduciary tie).

18         There are no allegations of any special circumstances that take Plaintiffs'

19  agreements with APT from an ordinary employment contract to one characterized by a

20  "confidential relationship."  This is not a situation involving a relationship between a

21  parent or a child, *see Locken v. Locken*, 650 P.2d 803, 805 (Nev. 1982); *Schmidt*, 418

22  P.2d at 375-76, an attorney and his client, *see Davidson v. Streeter*, 234 P.2d 793, 799

23  (Nev. 1951), or a partner and her co-partner, *see Leff v. Gunter*, 658 P.2d 740, 744-45

24  (Cal. 1983). While exceptions exist to the typical rule that a garden variety

25  employee-employer relationship is not a confidential relationship, those exceptions

26  typically arise from fraudulent or inequitable conduct.  *See, e.g.*, *Namow Corp. v. Egger*,

27  668 P.2d 265, 266-67 (Nev. 1983) (constructive trust appropriate where employee

28  embezzled employer funds to purchase and transfer real property).  Plaintiffs do not

1   demonstrate any relationship even approaching a fiduciary or confidential one between

2   themselves and their employers.  Indeed, even if Plaintiffs make these *allegations*, they

3   have not provided clear and convincing *evidence* of a confidential relationship.

4       Plaintiffs argue that whenever a person places trust and confidence in another, a

5   confidential relationship *may* exist.  *See Randono v. Turk*, 466 P.2d 218, 222 (Nev.

6   1970) ("A confidential relation exists between two persons, whether their relations be

7   such as are technically fiduciary or merely informal, whenever one trusts in and relies on

8   the other.").  This is technically a correct observation, but one that does not help

9   Plaintiffs; the existence of trust and confidence may be a necessary condition for a

10  confidential relationship, but it is not sufficient.  Even were that so, Plaintiffs have merely

11  alleged a series of promises or contracts.  Citing paragraphs 42-70 of the Amended

12  Complaint (dkt. no. 64), Plaintiffs argue that a confidential relationship exists in part

13  because of their allegations a memorandum written by former CEO Geoff Knapp

14  describes how Plaintiffs ought to be entitled to their commissions and compensation

15  package as agreed to when they were hired.  But no special circumstances can be

16  divined from this fact.  If their position holds, then any two contracting parties in privity

17  with one another would have a confidential relationship, since this is the scope of the

18  relationship alleged between Plaintiffs and APT.  That cannot be the law.

19              **b.    Retention of Legal Title**

20      For the same reasons discussed above, Plaintiffs have also failed to demonstrate

21  that retention of legal title to the disputed funds would be inequitable.  "A constructive

22  trust requires money or property identified as belonging in good conscience to the

23  plaintiff [which can] clearly be traced to particular funds or property in the defendant's

24  possession."  *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 947 (Cal. 2003)

25  (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)).

26  "The constructive trust is no longer limited to [fraud and] misconduct cases; it redresses

27  unjust enrichment, not wrongdoing."  *Bemis v. Estate of Bemis*, 967 P.2d 437, 441 (Nev.

28  1998) (quoting Dan B. Dobbs, *Law of Remedies* § 4.3(2) (2d ed. 1993)).

1    Plaintiffs brought this suit to prove precisely this point, yet attempt to argue the

2    merits of their unpaid wages claim within this requirement of the constructive trust

3    doctrine.  The Court cannot decide the merits of the case with only bare allegations.  But

4    even if Plaintiffs made a threshold showing of inequitable withholding of these funds,

5    they have failed to demonstrate why a trust imposed over the entire $413 million of

6    proceeds is warranted, and certainly not that such a trust is supported by clear and

7    convincing evidence of inequitable conduct.

8    Plaintiffs' citation to *Danning v. Lum's, Inc.*, 478 P.2d 166, 167-68 (Nev. 1970)

9    (affirming the dismissal of a complaint which failed to allege the existence of a res upon

10   which a constructive trust can be imposed) affords the Court another opportunity to

11   expand on the principal fault of their Motion.  Assuming that Plaintiffs have demonstrated

12   the existence of these disputed funds beyond mere liabilities, *see id.* at 168 (noting that

13   liabilities do not constitute property that may be subject to a constructive trust), it is

14   crucially important to realize that the Nevada Supreme Court in *Danning* only affirmed a

15   dismissal of a defective complaint.  Even if Plaintiffs properly pled the existence of a res

16   that may be subjected to the remedy they seek, they must still convince the Court to

17   impose that remedy.  In *Danning*, the plaintiffs could not make a basic showing on the

18   pleadings to allow them entry into the courthouse door.  Here, Plaintiffs do not merely

19   seek entry into the courthouse; they ask to bring down the Court's gavel in their favor.

20   That is the import of the clear and convincing evidence standard: a constructive trust will

21   not issue without a demanding showing, grounded in documented facts, that law and

22   equity justifies its imposition.  Plaintiffs do not make such a showing.

23                    **c.      Necessity of Trust**

24   The third requirement for the imposition of a constructive trust is that its issuance

25   be necessary to prevent a failure of justice.  Again, Plaintiffs have not satisfied their

26   burden.  While Plaintiffs fear the disappearance of the disputed funds via the sale of

27   APT, they have not demonstrated beyond speculation why they believe those funds

28   would be unavailable to them but for such a drastic remedy.  Plaintiffs' additional

9

1 | protests regarding APT's tactics during discovery have little to no bearing on this factor
2 | of the Court's analysis; any complaints about discovery are to be heard through motions
3 | properly filed before this Court.

4 | **III.    CONCLUSION**

5 | While Plaintiffs are entitled to the liberal pleading rules that characterize federal
6 | practice, they have failed to demonstrate with the required specificity the requirements
7 | for a Court-ordered constructive trust over the disputed funds. Accordingly, IT IS
8 | HEREBY ORDERED that Plaintiffs' Motion to Amend Complaint (dkt. no. 63) is
9 | GRANTED consistent with the discussion above.   Plaintiffs shall file their Second
10 | Amended Complaint within seven (7) days from the entry of this Order.

11 | IT IS FURTHER ORDERED that Plaintiffs' Motion for the Imposition of a
12 | Constructive Trust (dkt. no. 64) is DENIED.

DATED THIS 10th day of December 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

10