UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BARBARA RIVARD-CROOK; BILL CROOK, RAMON CORONA; MONIQUE DECHAINE; CHARLES DRAKE, JR.; LENORA HAYES; RISA HERRERA; NATE IMAHARA; ERIKA KNAPP; SANDRA LAUE; JOHN LAWRENCE; ARCELIA MALDONADO; KELLY STEVENS; RICK WRIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>ACCELERATED PAYMENT TECHNOLOGIES, INC., a Delaware Corporation; VEGAS HOLDING CORP., a Delaware Corporation; GREAT HILL PARTNERS, LLC, a Massachusetts Corporation; GREAT HILL EQUITY PARTNERS III, L.P., a Delaware Limited Partnership; GREAT HILL EQUITY PARTNERS iv, l. p., a Delaware Limited Partnership; and DOES 1 through 100, inclusive,<br><br>Defendants.<br><br>AND ALL CONSOLIDATED ACTIONS | Case No. 2:10-cv-02215-MMD-GWF<br><br>ORDER<br><br>(Defendants' Motion for Partial Summary Judgment – dkt. no. 138) |

## I. INTRODUCTION

This is a contract dispute regarding the payment of commissions between Plaintiffs and their employer, Defendant Accelerated Payment Technologies, Inc. ("APT"). Plaintiffs are all former or current employees of APT and its predecessor, CAM Commerce Solutions ("CAM").[1] Plaintiffs allege they are entitled to the payment of residual commissions on customer accounts they acquired for APT under various and differing commission payment structures from Plaintiffs' dates of hire through October, 2010. Defendants, APT and various corporately related entities, maintain that Plaintiffs lack any contractual right to the disputed commissions.

Before the Court is Defendants APT, Vegas Holding Corp., Great Hill Partners, LLC, Great Hill Equity Partners III, LP, and Great Hill Equity Partners IV, LP's (collectively "Defendants") Motion for Partial Summary Judgment. (Dkt. no. 138.) Defendants seek the Court's determination that Plaintiffs are not entitled to any payment of post-termination commissions. However, because questions of material fact remain with respect to the terms of the agreement governing the payment of commissions in place before June, 2006, the Court denies Defendants' Motion.

## II. BACKGROUND

### A. Factual Background

APT markets and sells software and services that enable businesses to process credit card payments and communicate those payments to the business' inventory, accounting, banking, and other data systems. As payment for providing these services, APT takes a small percentage of each credit card swipe of the customer-business. Each Plaintiff is a Merchant Sales Representative ("MSR") in charge of selling APT's services to various businesses. Part of an MSR's compensation is payment of a commission on

---

[1] On June 9, 2008, CAM entered into an Agreement and Plan of Merger whereby CAM became a wholly owned subsidiary of Defendant Vegas Holding Group. On May 25, 2010, CAM changed its name to APT. For simplicity sake, the Court will refer to the company throughout the Order simply as APT.

each account the MSR acquires for the company. This commission is calculated as a percentage of APT's revenue stream flowing from the credit card swipes.

Before June, 2006, Plaintiffs allege that their commissions were determined pursuant to a verbal agreement ("Agreement I"), under which MSRs received a 10% commission on any non-reseller account and an 8% commission on any reseller account[2] for the life of the respective account. Plaintiffs further allege that Agreement I provided for APT's continued payment of the commission after an MSR's employment was voluntarily or involuntarily terminated. Plaintiffs assert that they received a lower base salary in exchange for this annuity-type commission structure.

In May, 2006, APT created the "X-Charge Standard Commission Plan for CAM Inside Sales Representatives" ("Agreement II"). (Dkt. no. 147-2, Ex. 1.) Under this plan, MSRs received 10% of the monthly revenue generated from non-reseller accounts for the life of the account, and up to 8% of the monthly revenue generated from reseller accounts for five years. (*Id.*) Agreement II also included language terminating ATP's obligation to pay the commission upon termination of an MSR's employment. (*Id.*) This compensation plan became effective for each employee upon signature and the various Plaintiffs signed Agreement II between June, 2007, and June, 2008.[3] (Dkt. nos. 141-2 – 141-7.) Plaintiffs also signed acknowledgments of a 2006 and 2008 Employee Handbook, which also detailed that "eligibility for any commission ends on the last day of employment." (Dkt. nos. 142-6 – 142-8.)

Then, in 2010, APT once again changed the commission structure. Under this agreement ("Agreement III"), APT eliminated the perpetual commission structure, and reiterated the prohibition on post-termination commissions. (*See* Dkt. no. 141-9, Ex. E.)

---

[2] For purposes of this Motion, the distinction between reseller and non-seller accounts is not relevant.
[3] Defendants have not presented evidence that Agreement II was signed by Plaintiff Erika Knapp. However, Defendants have shown that Ms. Knapp signed an acknowledgement of the 2006 Employee Handbook, which also contained the prohibition of receipt of post-termination commissions. (Dkt. no. 139-4.)

1  Additionally, Agreement III stated that "effective August 1, 2010, all previous
2  Compensation Plans are considered null and void." (*Id.*) Agreement III further provided:

> Payment of Existing Residual Commissions will terminate and cease to be paid after December 31, 2010. No new merchant processing volume will be included in the calculation of existing residual commissions after July 31, 2010. Payment of all Existing Residual Commissions will cease as of the date of separation from the Company. No Existing Residual Commissions will be paid after December 31, 2010. If an employee separates employment prior to December 31, 2010, payment of all Existing Residual Commissions terminates as of the date of separation of the employment.

(*Id.*) This agreement was signed by all Plaintiffs. (Dkt. nos. 141-9 – 141-14, Ex. E.) Agreement III's commission structure was then repeated in a 2011 document that all Plaintiffs signed as well. (Dkt. nos. 142-1 – 142-3, Ex. G.)

### B. Procedural Background

On November 1, 2010, APT allegedly stopped paying Plaintiffs' residual commissions on accounts acquired under Agreement I and Agreement II, prompting Plaintiffs Rivard-Crook, Crook, Corona, DeChaine, Drake, Hays, Herrera, Imahara, Knapp, Laue, Lawrence, Maldonado, Stevens, and Wright to bring this lawsuit. The lawsuit was consolidated with nearly identical suits brought by Plaintiffs Granat, Gautier, Brennan, Conners, Maglaya, and Bright. On December 17, 2012, Plaintiffs filed an Amended Complaint adding various corporate defendants involved in the acquisition and merger of APT. Defendants now move for partial summary judgment on Plaintiffs' claims for post-termination commissions.

## III. DISCUSSION

### A. Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

      The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

/ / /

### B. Analysis

Defendants assert that they are entitled to partial summary judgment because Plaintiffs' written agreements establish that there was no obligation to pay post-termination commissions. Defendants further assert that any prior, verbal agreement is barred by the parol evidence rule. Defendants additionally argue that even if the Court could consider the alleged oral agreement, the agreement is nullified by the terms of Agreement III. However, Defendants misconstrue the allegations in the Complaint and fail to meet their burden in seeking summary judgment.

Defendants' argument that Agreement II, Agreement III, and the employee handbooks expressly prohibit receipt of post-termination commissions fails to address Plaintiffs' contention. Plaintiffs do not challenge the validity of the prohibition of post-termination commissions contained in Agreement II, Agreement III or the employee handbooks. Rather, Plaintiffs assert that they are entitled to post-termination commissions on the accounts they acquired prior to the effective date of those Agreements and pursuant to the compensation structure of Agreement I. In other words, it is undisputed that Plaintiffs are not entitled to post-termination commissions for accounts acquired after implementation of Agreement II. The allegations in the Complaint, however, are that although Agreement II affirmatively established the compensation structure and governed the relationship of the parties moving forward from its effective date, it did not reach back and affect commissions already earned. Thus, Agreement II and Agreement III's prohibition on the receipt of post-termination commissions does not definitively settle the matter because Plaintiffs' contentions rest on the alleged terms of Agreement I.

For this same reason, Plaintiffs' reference to a prior verbal agreement does not implicate the parol evidence rule. The parol evidence rule prohibits only in the admission of evidence of prior or contemporaneous verbal agreements or negotiations "*that would change the contract terms* when the terms of a written agreement are clear, definite, and

unambiguous." *Ringle v. Bruton*, 86 P.3d 1032, 1037 (Nev. 2004) (emphasis added). "[P]arol evidence *is* admissible to prove a separate oral agreement regarding any matter not included in the contract." *Id.* (emphasis added). Thus, the parol evidence rule would not bar evidence of a term allowing for post-termination commissions in Agreement I because that prior verbal agreement would not change the terms of Agreement II. Although Defendants correctly note that the prohibition against post-termination commissions is an express term contained in Agreement II, Agreement II only became effective upon signature of the employee—established as between June 2007 and June 2008 for the various Plaintiffs. Consequently, payment of post-termination commissions on accounts acquired before that date is a matter not included in Agreement II, and evidence of Agreement I's oral terms is admissible to show a separate, pre-existing agreement. Because Plaintiffs' reference to the prior verbal agreement is not an attempt to interpret or invalidate an unambiguous term in Agreement II, the parol evidence rule is inapplicable.

Thus, to demonstrate as a matter of law that Plaintiffs have no contractual right to payment of the post-termination commissions, Defendants must show one of two things. First, Defendants could show that Agreement I did not allow for the payment of post-termination commissions. Second, Defendants could show that Agreement II, Agreement III, or the employee handbooks required Plaintiffs to relinquish their rights under Agreement I as consideration for of these subsequent agreements. However, as discussed below, Defendants fail to meet their burden on either of these showings.

First, Defendants' evidence is insufficient to demonstrate that no questions of material fact remain with respect to Agreement I's treatment of post-termination commissions. Defendants present the deposition testimony of two Plaintiffs that they did not expect post-termination commissions (dkt. nos. 139-6 at 9-10, 139-7 at 11-12), the deposition testimony of APT's former CEO that he did not consider payment of post-termination commissions a legal duty (dkt. nos. 140-1, 140-2) and a declaration of APT's

former CFO that APT never paid post-termination commissions (dkt. no. 138-1). However, even without considering Plaintiffs' evidentiary objections, this evidence is insufficient to definitively establish that Agreement I did not provide for post-termination commissions. Although the expectations of two Plaintiffs, the legal conclusions of the CEO, and the business practices of APT tend to support Defendants' position, the Court cannot conclude that, given this evidence, no reasonable fact-finder could find for Plaintiffs. This is especially true considering: (1) the statements of the two Plaintiffs were made in the context of questions about the *written* agreements; (2) Plaintiffs produced statements of the CEO referencing his concern that the right to post-termination commissions be preserved; and (3) no evidence has been presented that any pre-2006 employee was, in fact, terminated such that an obligation to pay post-termination commissions had actually arisen in APT's business practices.[4] Thus, viewing the facts in the light most favorable to Plaintiffs, questions of material fact relating to Agreement I's treatment of post-termination commissions preclude summary judgment.

Second, Defendants misconstrue the law in arguing that the subsequent agreements eliminated obligations due and owed under Agreement I. Defendants argue that "as an at-will employer, APT had the right to make unilateral changes to the terms and conditions of employment, including commissions plans." (Dkt. no. 138 at 17.) This is a correct statement; however, the employer can only make unilateral *prospective* changes. *See Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 105-106 (Nev. 2008). An employer cannot alter obligations already due and owed for an employee's finished performance, even if the employee is classified as at-will.[5] *See id.* Thus, the only

---

[4] Additionally, the mere fact that APT had not paid does not necessarily mean that they were not obligated to pay.
[5] Indeed, if an employer and employee agree to a $40,000 salary in Year 1, and the employee performs his labors in Year 1, the employer may subsequently alter the terms for Year 2 and pay a salary of $30,000. However, that unilateral revision applies only to Year 2; it does not retroactively reduce the salary for Year 1.

mechanism by which APT could have legally ended the alleged existing and perpetual obligations incurred under Agreement I was to enter into a separate agreement that acted as a novation or an accord and satisfaction of its pre-existing obligations.

As to this issue, Defendants assert that the language of Agreement III was sufficient to sever any obligation owing under Agreement I. The necessary inference under this argument is that by signing Agreement III, Plaintiffs agreed to immediately relinquish all rights to perpetual commissions due and owing under Agreement I. Under this construction, Agreement III is an accord itself as satisfaction of APT's obligations under Agreement I. *See* Restatement (First) of Contracts § 418 (1932) ("A subsequent contract may itself be accepted as immediate satisfaction and discharge of a pre-existing contractual duty, or duty to make compensation; and if so accepted the pre-existing duty is discharged and is not revived by the debtor's breach of the subsequent contract."); *Johnson v. Utile*, 472 P.2d 335 (Nev. 1970). In other words, the Court must infer that for the consideration of continued employment and a revised compensation plan, Plaintiffs agreed to relinquish all rights to perpetual commissions under Agreements I and II—including rights to post-termination commissions under Agreement I—and to continue to sell APT's products and services.

However, although the language of Agreement III purports to eliminate APT's perpetual obligations incurred under all previous agreements, questions of fact remain as to whether the language in Agreement III in fact was an accord itself as satisfaction of APT's pre-existing obligations to pay commissions earned under Agreement I. Under Nevada law, "[t]o establish an accord and satisfaction, it must be clearly shown that '. . . there was a meeting of the minds of the parties, accompanied by a sufficient consideration.'" *Mountain Shadows of Incline v. Kopsho*, 555 P.2d 841, 842 (Nev. 1976), *quoting Walden v Backus,* 408 P.2d 712, 713-14 (Nev. 1965). Here, whether Agreement III is truly an accord is suspect. The language in Agreement III appears on its face to be much more of a unilateral elimination of any pre-existing, continuing

obligations than a mutual agreement to satisfy those obligations. Further, the consideration to satisfy APT's obligations under previous agreements seems lacking. There is no consideration in Agreement III other than continued employment and the new compensation plan. Viewing the facts in the light most favorable to Plaintiffs, this would only reasonably be sufficient for Plaintiffs' continued promise to promote and sell APT's goods and services—not to relinquish a contractual right to perpetual commissions as well. Consequently, as the evidence does not clearly show a meeting of the minds or sufficient consideration, the Court cannot determine that Agreement III was an accord itself as satisfaction of Agreement I.

Defendants have not provided sufficient undisputed evidence to show that Plaintiffs cannot establish a right to post-termination commissions under Agreement I or that the parties agreed that Agreement III satisfied APT's pre-existing obligations under Agreement I. Defendants thus have not met their burden of showing entitlement to judgment as a matter of law. Defendants' Motion must be denied.

### C.  Discovery and Evidentiary Issues

Plaintiffs' Response to Defendants' Motion raised a request to deny summary judgment under Fed. R. Civ. P. 54(d) because Defendants have not provided production of various materials requested in discovery. At the time of Defendants' Motion and Plaintiffs' Response, a separate motion under LR IB-3 for the Court to review the Magistrate Judge's Order granting Plaintiffs' Motion to Compel was pending. Given the Court's ruling on the Motion, the Court need not reach the Rule 54(d) request or the discovery issues. As the Court has since affirmed the Magistrate Judge's Order, the Court trusts that Defendants have now complied with the Order on the Motion to Compel.

Additionally, both Plaintiffs and Defendants included evidentiary challenges to the opposing parties' evidence in their filings. This Order does not constitute a ruling on

those objections. The parties may still seek to exclude evidence, but must bring such a request in the form of a motion so that the Court may rule on it.

### III. CONCLUSION

It is therefore ordered that Defendants' Motion for Partial Summary Judgment is denied.

DATED THIS 7th day of January, 2014.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE